330 F.3d 1214
 EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Plaintiff-Appellant,
v.
GRANITE STATE INSURANCE COMPANY, Defendant-Appellee.
Employers Insurance of Wausau, a Mutual Company, Plaintiff-Appellee,
v.
Granite State Insurance Company, Defendant-Appellant.
 No. 01-57231.
 No. 02-55024.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 5, 2003.
 Filed June 4, 2003.
 
 Bryan M. Barber, Larson King, San Francisco, CA, for the appellant-cross-appellee.
 Mark G. Bonino and Marta B. Arriandiaga, Ropers, Majeski, Kohn & Bentley, San Jose, CA, for the appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California; Stephen V. Wilson, District Judge, Presiding. D.C. No. CV-92-00406-SVW.
 Before HALL, THOMPSON, and BERZON, Circuit Judges.
 Opinion by Judge CYNTHIA HOLCOMB HALL; Dissent by Judge DAVID R. THOMPSON
 CYNTHIA HOLCOMB HALL, Circuit Judge.
 
 
 1
 The instant case is a subrogation action between a primary insurer, Employers Insurance of Wausau ("Wausau"), and an excess insurer, Granite State Insurance Company ("Granite"). The parties dispute whether Granite is liable to Wausau as a result of a settlement paid by Wausau on behalf of California Water Services ("CWS"), a mutual insured.
 
 
 2
 Wausau appeals the district court's decision to vacate a $9,549,950 judgment against Granite,[1] arguing that the district court improperly applied a two-year statute of limitations. Granite cross-appeals the district court's original grant of summary judgment to Wausau. Granite contends that even if the action is not time-barred, Granite is not liable for any portion of the CWS settlement because coverage under Wausau's primary policy was never exhausted.
 
 
 3
 This court has jurisdiction pursuant to 28 U.S.C. § 1291. We REVERSE the district court's decision to dismiss the action as time-barred, REVERSE the district court's decision that Granite's excess policy was triggered, and REMAND with instructions to enter judgment in favor of Granite.
 
 FACTS
 
 4
 Wausau issued five general liability insurance policies to CWS during the five-year period from January 1, 1980 to January 1, 1985. Granite issued five excess policies covering the same time period. The parties stipulated to the following characterization of their insurance policies:
 
 
 5
 1) "Each of the Wausau policies contained a per year limit of liability of $2 million for each occurrence and a $2 million aggregate limit of liability."
 
 
 6
 2) "The Granite State policies were first layer excess policies over the Wausau policies, and each of the Granite State policies contained a $5 million limit of liability for each occurrence and a $5 million aggregate limit of liability."[2]
 
 
 7
 Beginning in 1980, a group of homeowners experienced property damage caused by a landslide that was activated, in part, by ruptures in CWS's underground waterlines. Thirty-two homeowners subsequently brought suit against CWS. Wausau defended CWS, and ultimately settled the homeowners' claims for a total of $7,752,070.
 
 
 8
 Wausau filed the instant subrogation action against Granite on January 21, 1992, seeking $5 million. At Granite's request, on March 22, 1993, the district court stayed the action pending resolution of several potentially relevant California cases.[3] On March 31, 1993, during the stay, Granite filed a motion for summary judgment, asserting that Wausau's action was barred by a two-year statute of limitations. The district court denied the motion, holding that the case was governed by California Code of Civil Procedure § 337, which provides for a four-year statute of limitations in actions based on insurance policies and other written instruments.
 
 
 9
 On February 23, 2000, Granite filed an unsuccessful motion to dismiss for failure to prosecute. Thereafter, the parties filed cross-motions for summary judgment. On March 15, 2001, the district court granted Wausau's motion and denied Granite's motion. On August 23, 2001, Granite filed a timely motion for reconsideration. The district court granted Granite's motion, concluding that its prior decisions had erroneously applied a four-year statute of limitations. The court held that Wausau's action was not founded on a written instrument, and thus was barred by the two-year statute of limitations provided for in California Code of Civil Procedure § 339.[4] Accordingly, the district court vacated its earlier judgment in favor of Wausau, and entered judgment in favor of Granite. The parties filed timely Notices of Appeal and Cross-Appeal.
 
 STANDARDS OF REVIEW
 
 10
 We review a district court's grant of summary judgment de novo. Ventura Packers, Inc. v. F/V Jeanine Kathleen, 305 F.3d 913, 916 (9th Cir.2002). We also review de novo interpretation of a contract, Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship, 106 F.3d 1465, 1471 (9th Cir.1997), and the applicable statute of limitations, S.V. v. Sherwood Sch. Dist., 254 F.3d 877, 879 (9th Cir.2001).
 
 STATUTE OF LIMITATIONS
 
 11
 The district court held that subrogation is an equitable cause of action, and is therefore subject to a two-year statute of limitations. See Cal.Code Civ. P. § 339 (providing that a two-year statute of limitations applies to actions "upon a contract, obligation or liability not founded upon an instrument in writing"). Because, as Granite concedes, a direct action by CWS against Granite would have been subject to a four-year statute of limitations, Wausau contends that the district court's ruling contravenes the established rule that a subrogation suit is purely derivative of the subrogor's underlying cause of action.
 
 
 12
 The principle that the right of subrogation is derivative of the subrogor's cause of action is firmly ensconced in California law. See, e.g., United States v. California, 507 U.S. 746, 756, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (The subrogee "stands in the place of one whose claim he has paid.") (internal quotation and citation omitted); Brown v. Rouse, 125 Cal. 645, 650, 58 P. 267 (1899) (A subrogee "is put in all respects in the place of the party to whose right he is subrogated."); Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 1279, 1292, 77 Cal.Rptr.2d 296 (1998) (The insurer "stand[s] in the shoes" of the insured) (quotation omitted).
 
 
 13
 Because of the derivative nature of subrogation, a subrogee insurer is subject to "the same statute of limitations that would have been applicable had the insured brought suit in his or her own behalf." Great Am. W., Inc. v. Safeco Ins., 226 Cal.App.3d 1145, 1152, 277 Cal.Rptr. 349 (1991) (quoting WINDT, INSURANCE CLAIMS AND DISPUTES, § 10.11, at p. 554. (2d ed. 1988)). See also Redington v. Cornwell, 90 Cal. 49, 57, 27 P. 40 (1891); Auto. Ins. v. Union Oil Co., 85 Cal.App.2d 302, 304-05, 193 P.2d 48 (1948). In Auto. Ins., the California Court of Appeal articulated the policy basis for applying the subrogee's statute of limitations to the subrogor:
 
 
 14
 Upon principles of reason as well as natural justice, it seems only fair, right, just, and equitable that one who is subrogated to the rights and remedies of another should be allowed the same time in which to enforce such rights as the law would have allowed to the person to whose rights and remedies he succeeds.
 
 
 15
 Id. at 305, 193 P.2d 48.
 
 
 16
 Despite the established principle that a subrogation action is purely derivative of the subrogor's underlying cause of action, the district court held that Wausau was not entitled to the same statute of limitations that would have been applicable if CWS had brought suit against Granite on its own behalf. Instead, the district court adopted Granite's theory that because the doctrine of subrogation has its roots in equity, rather than in contract, California Code of Civil Procedure § 339 limits the statute of limitations to two years. See CAL. CODE CIV. P. § 339 (pertaining to actions "upon a contract, obligation or liability not founded upon an instrument of writing").
 
 
 17
 In its decision adopting Granite's view, the district court relied heavily on the conclusion that Century Indem. Co. v. Superior Ct., 50 Cal.App.4th 1115, 1117, 58 Cal.Rptr.2d 69 (1996) (holding § 339 applicable in an action between co-insurers) more accurately represents California law than does Liberty Mut. Ins. Co. v. Colonial Ins. Co., 8 Cal.App.3d 427, 432, 87 Cal.Rptr. 348 (1970) (holding § 339 inapplicable in an action between co-insurers). This focus is misplaced. Both Liberty and Century involve contribution between co-insurers as opposed to a subrogation action involving a primary insurer and excess insurer.
 
 
 18
 There is a critical distinction between the right of contribution and that of subrogation. "The right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to standing in the shoes of the insured." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 1279, 1294, 77 Cal.Rptr.2d 296 (1998) (citation and quotation omitted) (emphasis added). Unlike subrogation, the right of equitable contribution exists independently of the rights of the insured. Id.
 
 
 19
 For these reasons, Century is inapposite. Instead, the instant case is governed by the well-established line of cases holding that the statute of limitations in a subrogation action is that which would have been applicable had the insured brought suit on its own behalf. A direct action by CWS against Granite would have been subject to a four-year statute of limitations. Accordingly, Wausau should be afforded a four-year period in which to enforce CWS's rights against Granite. Because the parties do not dispute that Wausau brought suit within four years of when the cause of action arose, we REVERSE the district court's decision to dismiss Wausau's action as time-barred.[5]
 
 WAUSAU'S POLICY LIMITS
 
 20
 Granite cross-appeals the district court's interpretation of the Wausau insurance policy, which limited Wausau's total liability to $2 million, thus exposing Granite's policy to its $5 million annual limit. The district court held that the individual limits of Wausau's five policies could not be "stacked" to create coverage greater than one annual "per occurrence" limit. Granite disputes this interpretation of the Wausau policy, contending that because the "occurrence" giving rise to the CWS settlement took place over a five-year period, during which five separate policies with $2 million annual limits were in effect, Wausau's policies provided a total of $10 million in coverage.
 
 
 21
 Wausau and Granite do not dispute that the property damage giving rise to the CWS settlement arose from a single occurrence, and that continuous damage occurred proportionately throughout five policy periods. Through a joint stipulation, the parties also agreed that each of Wausau's five insurance policies limited Wausau's annual liability to $2 million, per occurrence and in the aggregate. Similarly, the parties do not dispute that Wausau's policy limit is properly characterized as a "per occurrence per year" limit.[6] Thus, the narrow issue before the court is whether a primary insurer's total exposure can be greater than its annual policy limit, where a single occurrence caused damage during multiple years in which annual "per occurrence, per year" policies were in effect.
 
 
 22
 Stonewall Ins. Co. v. City of Palos Verdes Estates, 46 Cal.App.4th 1810, 54 Cal.Rptr.2d 176 (1996), answers this question in the affirmative. Like the instant appeal, Stonewall was an insurance dispute arising out of a suit alleging negligence on the part of an insured party. Stonewall, 46 Cal.App.4th at 1823, 54 Cal.Rptr.2d 176. Several of the policies in effect during the time that the insured's negligence caused property damage had definitions of "occurrence" that were similar in breadth to the definition in Wausau's policy. See id. at 1849, 54 Cal.Rptr.2d 176 ("all damage arising from continuous and repeated exposure is deemed a single occurrence"). One such policy provided $300,000 in "per occurrence" coverage for each of three policy periods. Id. Under these circumstances, the insurer argued that its liability should be limited to $300,000. Id. The California Court of Appeal, however, held that the policy provided up to $900,000 in coverage for one occurrence that spanned the three-year period of coverage. Id.
 
 
 23
 Our present inquiry is virtually indistinguishable from the situation addressed by Stonewall. Like the instant case, Stonewall involved a continuing injury that was deemed a single "occurrence."[7] See id. at 1825, 54 Cal.Rptr.2d 176 (noting that the case involved "a continuous `occurrence,' using the language of the policies ... throughout the period from the beginning of the damage ... until that damage became complete"). Moreover, Stonewall's decision was based, in part, on a stipulation that the policy limit was "per occurrence per year." Id. at 1849, 54 Cal.Rptr.2d 176. Similarly, Wausau has expressly stipulated that its policy "contained a per year limit of liability of $2 million for each occurrence." In addition, Wausau has repeatedly characterized its policy limit as "per occurrence per year." For these reasons, we conclude that, under Stonewall, Wausau's policy limits may be "stacked" to create coverage in excess of $2 million.[8]
 
 
 24
 Wausau, however, argues that Stonewall is in conflict with another recent decision from the California Court of Appeal. In FMC Corp. v. Plaisted and Cos., 61 Cal.App.4th 1132, 72 Cal.Rptr.2d 467 (1998), another California Court of Appeal panel held that, where "coverage is ultimately keyed to and limited by the concept of `occurrence,'" an insured may recover an amount no greater than the policy limit for one policy period. FMC, 61 Cal.App.4th at 1191, 72 Cal.Rptr.2d 467. The court reasoned that allowing the insured to "stack" policy limits would give the insured more coverage for any given occurrence than the parties had bargained for. Id. at 1189, 72 Cal.Rptr.2d 467.
 
 
 25
 Wausau contends that FMC, in connection with several cases rejecting stacking in the "self insured retention" (SIR) context,[9] indicates that California courts have adopted a broad rule against stacking insurance policy limits. Wausau overstates the impact of these decisions. Whether or not SIRs may be stacked is not relevant to our present inquiry, which involves a primary insurer. See Montgomery Ward & Co. v. Imperial Cas. & Indem., 81 Cal.App.4th 356, 369, 97 Cal.Rptr.2d 44 (2000). ("SIR's may not be deemed primary insurance."); Cal. Pac. Homes, Inc. v. Scottsdale Ins. Co., 70 Cal.App.4th 1187, 1194-95, 83 Cal.Rptr.2d 328 (1999) (declining to apply Stonewall in a dispute involving SIRs, and emphasizing the in applicability of precedent involving primary insurers to the SIR setting).
 
 
 26
 FMC is also distinguishable from both Stonewall and the instant case. The FMC court expressly distinguished Stonewall by noting that it addresses a situation involving a "per occurrence, per year" stipulation. FMC, 61 Cal.App.4th at 1190, 72 Cal.Rptr.2d 467. As we have noted, Wausau made a virtually indistinguishable stipulation. FMC, therefore, neither conflicts with Stonewall nor requires us to limit Wausau's liability to one "per occurrence" limit.[10]
 
 
 27
 We conclude that California courts have not broadly rejected "stacking" in the primary insurer context. To the contrary, California courts have expressly approved stacking successive "per occurrence per year" policy limits where, as here, a single occurrence extends through more than one policy period. See Stonewall, 46 Cal.App.4th at 1849, 54 Cal.Rptr.2d 176 (stacking three "per occurrence per year" limits). Here, Wausau's policy provides $2 million in coverage per year. The parties have stipulated that $7,752,070 in damage occurred proportionately during the five policy periods. Per the parties' stipulation, we must conclude that $1,550,414 of damages occurred during each policy period. Because Wausau's policy provided up to $2 million in coverage per year, Wausau is responsible for the entire settlement paid on behalf of CWS.
 
 
 28
 Finally, Wausau argues that allowing an insured to recover more than one policy limit would render Granite's excess coverage illusory. The only basis provided for this argument is the fact that, as applied to this case, Granite's theory does not trigger the excess policy. This does not render Granite's coverage illusory. Clearly, if damages had exceeded Wausau's $2 million limit during any given year, Granite would be liable for the excess. Under a principle commonly termed the "horizontal exhaustion" rule, in California, "liability under a secondary [excess] policy will not attach until all primary insurance is exhausted, even if the total amount of primary insurance exceeds the amount contemplated in the secondary policy." Stonewall, 46 Cal.App.4th at 1850, 54 Cal.Rptr.2d 176 (citing cases). Granite's argument is consistent with this rule. We conclude that the district court erred by limiting Wausau's liability to $2 million.
 
 CONCLUSION
 
 29
 We REVERSE the district court's decision to dismiss the action as time-barred, REVERSE the district court's decision that Granite's excess policy was triggered, and REMAND with instructions to enter judgment in favor of Granite.
 
 
 
 Notes:
 
 
 [1]
 The district court awarded $5 million in damages and $4,549,950 in pre-judgment interest
 
 
 [2]
 The actual policy language relating to limits on liability is not a part of the record
 
 
 [3]
 The cases that formed the basis for the stay wereMontrose Chem. Corp. v. Admiral Ins. Co., 3 Cal.App.4th 1511, 5 Cal.Rptr.2d 358 (1992), aff'd, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995), and Stonewall Ins. Co. v. City of Palos Verdes Estates, 6 Cal.App.4th 802 (1992).
 
 
 [4]
 The parties agree that Wausau filed suit approximately three years and four months after its cause of action against Granite arose
 
 
 [5]
 Granite also urges the court to hold that Granite's insurance policy contractually imposes a one-year statute of limitations. The policy provides, "The Assured shall make a definite claim ... within twelve (12) months." We reject this contention and agree with the district court that "claim," in the context of the Granite insurance policy, refers to notice rather than the filing of a complaint
 
 
 [6]
 Both parties' briefs repeatedly use the phrase "per occurrence per year" to describe the Wausau policy
 
 
 [7]
 Although the opinion uses the plural form of "occurrence" several times, we note that the court uses the plural in reference to broad principles of law rather than to the facts of the caseStonewall, 46 Cal.App.4th at 1853, 54 Cal.Rptr.2d 176 ("[I]f `occurrences' are continuously occurring throughout a period of time, all the primary policies in force during that period of time cover these occurrences."). These references do not undermine the court's clear intent to address a situation in which, under the policy terms, "a single occurrence" has taken place, but has caused damages during more than one policy period.
 
 
 [8]
 Granite also citesAlpha Therapeutic Corp. v. The Home Ins. Co., 90 Cal.App.4th 1330, 109 Cal.Rptr.2d 698 (2001), which was depublished by operation of law upon grant of review by the California Supreme Court. Granite correctly notes that we may consider unpublished state decisions, even though such opinions have no precedential value. Nunez v. City of San Diego, 114 F.3d 935, 943 n. 4 (9th Cir.1997). Alpha Therapeutic rejects a broad anti-stacking rule, holding that where an insured suffered for several years from injuries caused by a single "occurrence," recovery should not be limited to a single year's policy limit. Alpha Therapeutic, 90 Cal.App.4th at 1349, 1352, 109 Cal.Rptr.2d 698. We agree with Granite that Alpha Therapeutic, while certainly not dispositive of how the California Supreme Court would rule, lends support to Granite's contention that Stonewall accurately represents California law.
 
 
 [9]
 Wausau citesMontgomery Ward & Co. v. Imperial Cas. & Indem., 81 Cal.App.4th 356, 97 Cal.Rptr.2d 44 (2000) and California Pacific Homes, Inc. v. Scottsdale Ins. Co., 70 Cal.App.4th 1187, 83 Cal.Rptr.2d 328 (1999).
 
 
 [10]
 We also note that the policy at issue inFMC provided that "[p]roperty damage caused by exposure to conditions and occurring partly before and partly during the policy period shall be deemed to result from an occurrence during the policy period if claim therefor is first made during the policy period." FMC, 61 Cal.App.4th at 1191, 72 Cal.Rptr.2d 467. The FMC court concluded that this provision limited the insurer's exposure "to the coverage limit applicable to a single policy period." Id. The record does not indicate that the Wausau policy contained any such limitation.
 
 
 DAVID R. THOMPSON, Circuit Judge, dissenting:
 
 30
 I agree with the majority on the statute of limitations issue, but I would affirm the district court's judgment on the stacking issue. Thus, I respectfully dissent.
 
 
 31
 In the present case, there was one occurrence causing damages in successive policy years. This fact distinguishes this case from the California Court of Appeal's decision in Stonewall Ins. Co. v. City of Palos Verdes, 46 Cal.App.4th 1810, 54 Cal.Rptr.2d 176 (1996), in which there were multiple occurrences. In Stonewall, the court relied upon "occurrences" that were "continuously occurring throughout a period of time...." Id. at 1853, 54 Cal.Rptr.2d 176. The court's use of the plural "occurrences" was not, as the majority asserts in footnote 7, a "reference to broad principles of law." It reflected the facts of the case as recounted by the court:
 
 
 32
 as a result of the City's ongoing periodic design, maintenance and mitigation activities, relatively minor erosion damage to the Papworth property was occurring in 1978 and the deep-seated landslide was activated which effectively destroyed the property in 1981.
 
 
 33
 Id. at 1843, 54 Cal.Rptr.2d 176.
 
 
 34
 We are compelled to decide the present case according to California law. That law was set forth in FMC Corp. v. Plaisted & Cos., 61 Cal.App.4th 1132, 72 Cal.Rptr.2d 467 (1998). FMC was a property damage case involving alleged continuous injury arising out of a single occurrence. The California Court of Appeal specifically rejected the stacking of limits of an insurer's policy for consecutive periods when the continuous injury arose out of a single occurrence, reasoning that stacking would afford "the insured substantially more coverage, for liability attributable to any particular single occurrence, than the insured bargained or paid for." Id. at 1189, 72 Cal.Rptr.2d 467.
 
 
 35
 The California Supreme Court's decision in Montrose Chemical Corp. v. Admiral Ins. Co., 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995) is not to the contrary. In Montrose, the court addressed the duty to defend, not the duty to indemnify. Id. at 694, 42 Cal.Rptr.2d 324, 913 P.2d 878. Because the duty to defend is broader than the duty to indemnify, even a potentially covered injury would obligate the insurer to provide a defense. See Id. at 660 n. 9, 42 Cal.Rptr.2d 324, 913 P.2d 878. The California Court of Appeal in FMC distinguished Montrose on this ground and so should we. See FMC, 61 Cal.App.4th at 1200, 72 Cal.Rptr.2d 467.
 
 
 36
 In sum, I agree with the district court's decision on the stacking issue, and would affirm its judgment in favor of Wausau.